Good morning, your honors. May it please the court, my name is Todd Borden from the Federal Defender's Office and I represent the appellant, Joshua Flores, and I'm going to try to save two minutes for rebuttal. Under Crawford, prior hearsay testimony may be admitted only if the witness is unavailable and the defendant had a prior opportunity for cross-examination. And the court in Crawford defined the scope of the confrontation clause with reference to the common law right of confrontation as existed at the founding. And as counsel, can I just stop you there? Because I mean, it is true that there's language in Crawford about the Sixth Amendment. There's some pretty broad language that says that the Sixth Amendment has to be interpreted based on the common law. But I think it's also clear that it didn't overrule because the issue wasn't squarely presented, Ohio versus Roberts, which didn't look to the common law and look to the reasonableness. What do we do with that? Well, I would definitely point the court to Judge O'Scanlan's concurrence in Scioto. I think that kind of outlined, I mean, really it probably outlines the argument better than I made it in my brief. But, you know, the argument there is, you know, the methodology of Crawford really does look, you know, overwhelmingly to those common law principles to determine what the scope of the confrontation right is. And, you know, the common law unavailability requirement was simply just much more robust than sort of what has developed since then. I don't necessarily disagree with you, although we can have that discussion. My question is, do we get there? Because the other problem that you have is not only the fact that most other courts have still applied Ohio versus Roberts, and Judge O'Scanlan's was a concurrence. You know, I might even agree with him in theory, but we have a 2023 case just from last year that said that Roberts continues to apply for unavailability. And in that case, it was because the witness was out of the country. So now we have the Supreme Court saying, you know, making a reasonable attempt is the test under Ohio versus Roberts. And now we have the Ninth Circuit saying that that same rule applies if they're unavailable, if they're outside the country. How do we then come in and say, well, there's a different test. We're going to look to the common law if they're unavailable because they're ill, but we're unavailable because they're out of the country? A couple of points, Your Honor. So first, I think it's important to emphasize that the argument I'm making here and the argument the defendant in Scioto made about the sort of common law rule was not raised in those cases. So even though those are post-Crawford cases, the argument, you know, repeating the prior rule when this particular argument has been made doesn't bind this court. I mean, that's... Well, what's the basis for that? I'm not aware of that. I mean, if we have a holding of the court, we're bound by the holding of the court. Now, it might be wrong. Maybe we should seek en banc review, but I can't imagine that we have the authority to just dismiss and not follow. Perhaps we can distinguish, which is what I'm trying to give you an opportunity to help me distinguish. I'm not sure how to do it logically, but I don't think we can just say, well, this argument wasn't made, and so, therefore, we can reject a prior holding of this court. So I guess I would point the court to the case I cited in my reply brief. That's Curialuk. And it's, you know, it stands for the principle that, you know, the president must squarely address the issue, this particular argument that are being made in order to bind the court. I didn't cite this in my reply brief. I can do it in a 28-J letter, if you like. But the Castillo decision also is another one that came out recently. That was about... That was Ninth Circuit? That's right. That was about the deference to guidelines commentary issue that's been percolating. But I guess my concern with this, counsel, is even as recently as 2011 with Hardy v. Cross, it's cited to the rule from Barber v. Page, which Ohio v. Roberts then adopted. It seems to continue to be the, you know, the prevailing, controlling thing that we look at unavailability based on the government, you know, making good faith efforts to try to reach witnesses. And how can that square with your theory that the only way that someone can be unavailable is if they're not alive anymore? Well, so I disagree, Your Honor, that Hardy is controlling here. I think it's important to look at the procedural posture of that case. It was a summary reversal of a 2254 situation. And under Teague, they were not actually even applying Crawford. They were looking...  It was a habeas case. It wasn't applying. It was applying Ohio because... Because it was pre-Crawford. Because the appellate decision at the time that was being challenged under 2254 was pre-Crawford. So I think that there's limited... But even Crawford, even Crawford itself, even though it abrogated Ohio v. Roberts with respect to one part of the decision, went on to discuss favorably both Maddox and Barber on the unavailability point and was siding it with approval. So I guess what you're asking us is to say that Crawford overruled Ohio v. Roberts in its entirety, even though several cases seem to disagree with that point. Okay. I mean, I may be toiling in a field that I might not succeed, but I guess I would just say that... Or urge the Court to look to Judge O'Scanlan's concurrence. I think... I want to ask a pragmatic question here. It is true that we don't have any cases from the Supreme Court that talk about unavailability as to death or illness, right? That's right. So we would be applying the Roberts rule by analogy and just saying, they talked about that in the context of unavailability. Here's a new category of unavailability. That's all we're left with, right? I'm not sure I follow, Your Honor. So you can be unavailable for multiple reasons, right? You're out of the country, you're dead, the defendant, you know, disappeared you. I mean, there's other ways to be unavailable. And the Roberts rule was addressed in a context different than what we have in this case. That's right, that's right. So the thing I'm struggling with all of that was to lead up to this question. The Roberts rule is the government has to make reasonable efforts to get the witness. And that makes sense when the witness is out of the country or missing or whatever, and we want the government to like find the person, try to get them to court. What would the government reasonably do to get an ill witness to court? I mean, I think, you know, I mean, in this case, you know, the one thing trial counsel certainly raised was getting an escort to help them through the airport, you know, things like that. I mean, this was sort of more of a disability than a, you know, a sickness sort of illness. But again, that's really not the argument we're, you know, pressing so much here on appeal. I did want to pivot. Well, I think you should be pressing it. I think Judge Forrest is throwing you a lifeline here trying to distinguish these other cases. And that's the issue we're struggling with. Your Honor, my time is running a little low. I did want to pivot to the other independent basis that I cited, which is the prior opportunity for cross-examination being an in-person cross-examination. You know, as I cited in my brief, I think that is an independent basis. The 19th century cases are pretty clear that it always needed to be in-person, and there just wasn't an opportunity here. So even if I'm not necessarily persuading the court on the issue of the sort of originalist point I was, and the initial point, that is a separate independent basis. And by the way, thank you for raising the originalist point. I hate to be the one to pour cold water on it, but. Well, you know, I. You need to do more of it. That's what we're doing. But I do want to, I do think it's important to emphasize that is an independent, separate basis. And there was. Let me, let's start with this. The government is contending that there was waiver or that essentially your clients acceded to this suppression hearing done by Zoom. Right. And I understand your point to be, well, this was during COVID and there was no other choice. That's right. So how do we, how do we grapple with that, with that? You know, you have a, you have a modern technology that allows someone to be cross-examined and a client who acceded to that under, you know, not, not ideal circumstances, but there was cross-examination in the hearing, but it's not quite on all fours with, with the notion of, of complete waiver because you, he would have preferred an in-person. So how do we deal with those competing issues? So two points, I really point the court to Barber versus Page, you know, and that, that Supreme Court decision kind of lays out the harmlessness analysis or not the harm, sorry, the waiver analysis. And, you know, in that, in that case, the defendant had no way of knowing at the time of the preliminary hearing that the witness would later become unavailable. And they said, you know, you could only waive your confrontation right if it's an intentional relinquishment of a known right. And, you know, I would say Mr. Flores had no way of later become unavailable. So I think, you know, it, and I, and I take it, so, you know, the government's response has been an opportunity to cross-examine is enough. And I think that's a bit of a aggressive argument, but I would say there was cross-examination. So my question to you then would be what, what limited counsel, defense counsel's ability to cross-examine this witness in the absence of having to be doing so in person? I, I mean, I guess part of it is, is, I mean, I think we're really emphasizing that there's a separate right to face-to-face encounter, looking back, and that aspect was denied. I mean, and we're not really making arguments about the, the sufficiency of the opportunity in the sense of what was probed. It was more the ability to actually see the person whose testimony, you know, is going to potentially, you know, affect your liberty. I have utterly failed to say... Well, don't worry. We'll, we'll give you, if we keep you over, you got, I've, I've... I want to ask you about harmlessness. Sure. Do you agree that if all of the events that were necessary to support the convictions are shown on the video, that Officer Schultz's testimony, and whether it was present or not, is a harmless situation? So, okay, so a few, a few responses to that. I do think that not, you know, the beginning of the encounter was not captured on video. I know that. So I'm asking you to, if I, if, so assume, or I mean, yeah, I'm, I'm asking you to assume that if all of the events necessary to, for the court to render the verdict that it rendered are depicted on the video, is it a harmless error? You know, if the court can determine, you know, beyond reasonable doubt, you know, again, it's the Chapman elevated, you know, it's not just plain vanilla harmlessness. This is the most elevated standard. But if the court can reach that determination, yes. I would note, though, that the video, the body-worn video, at least, came in through Schultz's testimony. So that is potentially a complicating factor there. But, but I do think, I do. Is it your contention that it couldn't come in, like it couldn't be authenticated by one of the other officers? Well, I mean, I guess it's hard to say. The government says that the residual exception would apply. I'm not, I, we haven't, I know it's not totally clear, I think, but. So then I guess the next question is, what do you think that isn't on the video that would be necessary for the verdict? So I would say that, you know, I do want to pivot to what sort of triggered this encounter. Because when the videos both start, you know, it is extremely escalated scenario. And we do have, you know, some of the non-law enforcement witnesses, his ex-girlfriend and the 911 caller, are both testifying, you know, that the officers definitely came in kind of hot and were very aggressive. And so, you know, getting the testimony from Schultz, who was the lead officer, who, you know, was the only one in uniform, who was giving the commands that were the basis for some of the charges. You know, getting his testimony about what sort of triggered this was important. Also, the defense position was that Rivera was the less credible of the two witnesses. That's at exceptions record 100 to 104. So, you know, if you remove the less credible of the two law enforcement officers, that, you know, we think that's problematic. I get the point that the district court raised about there's a difference between cumulative and corroborative. And if something is corroborating challenged testimony, then you can't just say it's cumulative and it doesn't matter. My problem is I went back to the magistrate judge's decision and tried to identify all the things that she referenced in support of the three offenses. Right. And it seems to me that she's referencing things that are all depicted on the video, so we didn't really need his testimony about what happened before the video. Yeah, I guess I would say that sort of what triggered this situation is relevant to the mens rea elements, which one and two have a mens rea element. And the defense theory was always that sort of, you know, my client had some mental health problems, anxiety, possible PTSD, and that sort of this encounter with the officer sort of triggered. I'm sorry, we're taking over, but I really I want to drill down on this a little bit. So she says that for the interference charge, he was told to put his arms behind his back so that they could handcuff him, and he didn't do it. You watch the video, all of that is depicted. Right. You can make an assessment about whether he did what he was directed to or not. Why do we need stuff that happened before the video started to know whether he did that with the proper mental state? I mean, our position is that if, you know, he's having some sort of, you know, episode and it's, you know, sort of spiraling or whatever, if that's what happened and what happened in the beginning pre-video would, you know, would certainly inform that. Schultz doesn't speak to that. I mean, what testimony can you point to in Schultz that would support your theory that he was having an episode? Yeah, I mean, I think it's more just the sort of adding to the context. And I think it's more sort of a subtraction sort of, you know, if you agree with us that Rivera was, his testimony was iffier, then you're sort of left only with Schultz. And if he's gone, then, you know, that's sort of the position we're taking with that. And finally, you know, I would note that the, you know, Judge Chesney, who's, you know, pretty experienced, did, you know, determine it wasn't harmless. So I think that's certainly entitled to some weight. And I've gotten massive... I wanted to ask about that. Is that, do we review that for de novo review? Or do we review that de novo? Or do we, do we give it to, I mean, you said it's entitled to some weight. And that was a question I had because... So I guess I would say, no, I mean, I couldn't find a case directly on, I mean, I certainly tried, but this is, the universe of case law about magistrate appeals is somewhat limited. And so, but I have to, you know, it would have to be de novo. I can't think of any reason why a subsequent appellate court would be doing anything other de novo. All that said, though, I do think, you know, it's, you know, it's, I think it's an important data point. And I would point to the, you know, the D.C. Circuit opinion I cited in my brief, talking about if it's debatable about whether or not it tipped the scales. You know, I think this would suggest that maybe if Judge Chesney reached that view. But I have gone to Massimiliano. Yeah, no, you haven't. We'll give you a minute for rebuttal. Okay, I appreciate that, Your Honor. Good morning, Your Honor, and may it please the Court. My name is Ross Mazur on behalf of the United States. Admitting Officer Schultz's prior testimony satisfied the standard in the case. The officer was medically unavailable at the time of trial, and the defendant had a prior opportunity to and, in fact, did cross-examine him. Can I ask a more basic question? Why did you offer Schultz's testimony at trial? I don't know if you were trial counsel, but why did the government offer it? Because now you're in saying, well, it's harmless error because we had everything else we needed, and you knew that there was a confrontation clause problem. So why wasn't the decision just strategically made, let's take this off the table because we've got enough to go with otherwise? Yeah, I think in retrospect, it should have been because we didn't need it, and we didn't rely on it really. Ultimately, our visit... You just wanted to give us a fun issue. Is that the real answer? I always try to help out if I can. But ultimately, we thought it was admissible. He wasn't available, and so we admitted it. But in retrospect, it just wasn't necessary. Below, you argued that he wasn't available because the rule of evidence 804 was satisfied with regard to the unavailability standard. Is that your position still? Our position, yes, we believe rule 804 was satisfied, but the defense doesn't challenge rule 804 and make any hearsay claim whatsoever. Our position was also that the confrontation clause is satisfied. That's my question. Below, it seemed pretty clear that the government's position was that the confrontation clause issue was governed by the rule 804 standard. It's true that I don't see a reason to distinguish rule 804 from the confrontation clause with respect to the specific question of whether a witness is sufficiently ill as to render that witness... Why is that true when Crawford tells us that the rules of evidence don't govern the confrontation clause? I'm sorry, Your Honor? Why is that true when Crawford clearly tells us that the rules of evidence do not govern confrontation clause issues? Even if it's not, the standard for unavailability is still governed by Roberts, whereby the government has to make a good faith or reasonable effort to obtain the witness's presence at trial. Did you argue that below? Was Roberts argued below? I don't know that Roberts was specifically cited below, but we argued that the confrontation clause was satisfied. On appeal, we've developed that argument. The same standard, Crawford did not change the standard for unavailability. This Court has held as much. The defense has not challenged whether the facts meet that standard. They've only challenged the legal standard itself, whether only a witness's death will render the witness unavailable. That argument is foreclosed, and all this Court... So if Ohio v. Roberts was not argued below and the standard wasn't argued below, are you arguing there's a waiver issue? If we find that Ohio v. Roberts controls here, do we just find that the defendant has waived his argument or forfeited it because he didn't discuss Ohio v. Roberts below? Well, the defense has waived any argument that the facts don't meet the correct legal standard. Right, and that's my question. So you're saying that we can't do an... I think you're saying that if we find Ohio v. Roberts applies, we can't do an independent analysis of whether it meets reasonableness. Well, I would say that to resolve the unavailability in this case, the Court doesn't need to, and that's the easiest way. The defense hasn't raised that. Why? Because it's harmless? We can say it was just harmless? Because if Ohio v. Roberts applies, they theoretically could, whether they've argued it, argue that the government didn't take reasonable efforts. I mean, if there was something easy that the government could have done and it refused to do it, presumably even under Ohio v. Roberts, you'd have a confrontation cause problem. Yes, Your Honor. Theoretically, they could have made that argument, but they didn't. And so I think they've waived it in that respect. Also what about your argument about needing a live to be in person for the suppression hearing itself, and that it wasn't waived because Mr. Flores was constrained to do so because of COVID? Well, the trial court offered him the opportunity for an in-person hearing. He twice waived that, once in writing and once at the start of the suppression hearing, when in fact the defendant changed his mind at the last minute about whether to hold a trial in person. He had previously consented to a trial remotely. And when he changed his mind, even though it was at the last minute, the court honored its promise to hold it in person. And then the court did. So there was no question that all of the parties understood that the court would not proceed remotely at either the hearing or the trial without both parties' consent. The defendant consented to proceed remotely at the hearing, but not at the trial. And so the court held the hearing remotely and the trial in person. Had Officer Schultz moved to Philadelphia at that point? So would there have been a different issue with his appearance had the defendant asked for an in-person suppression hearing? The officer became unavailable in between the suppression hearing and the trial. So the second prong of Crawford, the government has argued that the defendant had the opportunity for cross-examination for two reasons. Because the requirement of in-person confrontation has nothing to do with the admission of testimonial hearsay. That applies only to live testimony at trial. And second, alternatively, even if it did, the defendant had that opportunity for in-person confrontation when the judge offered him an in-person hearing, but he declined it. And lastly, just on the harmlessness point, the centerpiece of the defendant's case was a psychologist expert who opined that the defendant suffered from PTSD. The trial court made an adverse credibility finding, which the defense has not challenged on appeal. All of the offense conduct, all of it, was captured on the video. Officer Rivera testified from start to finish about everything that happened. Officer Aguirreano arrived early in the counter and testified to at least some of the interfering acts with agency functions and to the disorderly conduct. And Officer Henner, who we also called, confirmed the defendant's state of intoxication. I do. So under Chapman, the standard is if there's no reasonable probability that the evidence might have contributed to the conviction. So even if there was the video evidence, why isn't it enough if there's some question whether Officer Schultz's testimony would have tilted in favor of crediting, I'm sorry, I'm trying to remember the other officer's name, Rivera's testimony, or do something that would shed light on his intent in order to raise that question as to being harmful? So first, on the legal standard, I agree that Chapman's standard is a high one, but it's not an impossibly high one. And I would point the court to Chiota, where two civil depositions were improperly admitted in violation of the Confrontation Clause. The court characterized them as important to the government's case. Nevertheless, it found that the Confrontation Clause error was harmless under that standard. But on the facts of the case, the defense heavily relied on Officer Schultz's existing testimony, which they thought benefited them, whereas the government didn't rely on it at all. The videos showed what Officer Schultz said and did, and so in order to prove what he said, we didn't need his testimony. We could just watch the videos. And as to intent, the argument about intent relied on the defense argument about PTSD, that the officers had triggered a PTSD episode. First, the physical conduct, where Officer Schultz did an open-hand palm slap to distract the defendant while he was being handcuffed, was caught on video. So we saw that. And second, the psychologist expert who opined on PTSD was found to be incredible. So there was no question about intent. Officer Schultz's testimony didn't speak to that. We would ask that the court affirm. Thank you. Just a couple of quick points. On the opportunity for an in-person evidentiary hearing, I think as a factual matter, you know, I think Mr. Flores, to some extent the government is trying to hold Mr. Flores' trials counsel's, you know, accommodations against Mr. Flores. But I don't think if counsel had been more kind of disagreeable and said, no, I want in person, it could have actually happened. I urge the court to look to the Northern District's general order and effects at the time. I don't think an in-person hearing could have happened if he insisted. And there's no confrontation right in an evidentiary hearing. So I think as a factual matter, whether or not it ever could have been in person is highly, highly, highly questionable. On harmlessness, you know, I do agree with Judge, you know, I think Judge Nelson raises a good point that the government certainly thought this was important and, you know, Also, the fact the defense cited Schultz's testimony, I think really just suggests that, you know, they were doing what they could strategically based off the rulings that were made. I don't think that necessarily shows it wasn't harmless. And finally, I do want to just suggest the as to intoxication, the evidence here was not especially overwhelming. There was no field sobriety tests. There was no blood alcohol test. And the standard is quite high for that case under this court's case law. So for all those reasons, I would urge the court to reverse. Thank you. Thank you to both counsel for your arguments in the case. The case is now submitted. And
judges: NELSON, FORREST, SANCHEZ